NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

|  |  |  |
|---|---|---|
| CLARENCE E. SCOTT, JR., | : | |
| | : | Civil Action No. 14-7475(SRC) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEPHEN D'ILIO, et al., | : | |
| | : | |
| Respondents. | : | |

**CHESLER**, District Judge

This matter comes before the Court upon the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by Petitioner Clarence E. Scott, Jr., ("Petitioner"), an inmate confined in New Jersey State Prison, in Trenton, New Jersey. (Pet., ECF No. 1.) On February 13, 2001, a jury in Passaic County Court, New Jersey, found Petitioner guilty of (1) fourth-degree aggravated assault for pointing a weapon; (2) second-degree possession of a weapon for an unlawful purpose; (3) third-degree unlawful possession of a weapon; and (4) second-degree certain persons not to have weapons. (Pet., ¶¶1-5); State v. Scott, No. A-2819-07T4, slip op., at 2 (N.J. Super. Ct. App. Div. Apr. 30, 2003). Petitioner was sentenced to an extended Graves Act term of twenty years with ten years' parole ineligibility on the possession of a weapon for an unlawful purpose charge, and a consecutive extended term of twenty

years with ten years' parole ineligibility on the possession of a weapon by a convicted felon charge. Id. Petitioner appealed his conviction and sentence, and the Appellate Division, on April 30, 2003, affirmed Petitioner's conviction and the extended Graves Act sentence, but vacated the second extended sentence and remanded for resentencing. Id. at 7. Petitioner was later resentenced to an aggregate term of 30 years with 15 years of parole ineligibility. (Pet., ¶ 3.) The New Jersey Supreme Court denied certification. (ECF No. 10-19.)

Petitioner filed a petition for post-conviction relief on January 29, 2004. (Pet., ¶ 11.) The PCR Court denied the petition on February 3, 2012. (Id.) The Appellate Division affirmed, State v. Scott, No. A-5238-11T1, 2014 WL 814069 (N.J. Super. Ct. App. Div. Mar. 4, 2014), and the New Jersey Supreme Court denied certification, 219 N.J. 630 (Sep. 25, 2014). Petitioner filed his habeas petition in this Court on December 1, 2014. He raised the following grounds for relief:

> GROUND ONE: Ineffective Assistance of Counsel.
>
> GROUND TWO: The Extended Term Sentence Imposed on Defendant was Illegal and Excessive.
>
> GROUND THREE: Trial court erred in denying defendant motion for Judgment of Acquittal.

GROUND FOUR: Ineffective Assistance of Appellate Counsel and PCR Counsel.

(Pet., ECF No. 1 at 5-10.)

I. BACKGROUND

The factual background in this matter was summarized in part by the New Jersey Superior Court, Appellate Division upon Petitioner's direct appeal.[1] <u>Scott</u>, No. A-2819-01T4 (ECF No. 10-16). On February 27, 1997, Defendant Clarence Scott shot Lamont Folsom in the arm, breaking it and causing nerve damage. At the time of the incident, the two were in Folsom's bedroom with the door closed, apparently arguing. However, after the shot occurred, Folsom's mother witnessed Scott standing over Folsom with a gun pointed at his head.

At trial, Mr. Folsom testified that after having a discussion in his bedroom with Petitioner, Petitioner pulled a gun from his coat and then Mr. Folsom heard a bang. (ECF No. 10-4 at p. 11.) Mr. Folsom further testified that after he was shot, Petitioner pointed the gun towards Mr. Folsom's head and told him not to tell anyone that Petitioner shot him. (<u>Id.</u> at pp. 11-13.) Petitioner testified that he told Mr. Folsom's mother, who entered the room after the shot was fired, that the

---

[1] The facts found by the Appellate Division are presumed correct pursuant to 28 U.S.C. § 2254(e)(1).

shooting had been an accident. (Id. at pp. 11.) Mr. Folsom's mother also testified that Petitioner stated that the gun discharged accidentally. (Id. at pp. 68-69.) Petitioner further testified that Mr. Folsom had handed him the gun during discussions about a debt that Mr. Folsom owed Petitioner and that Petitioner did not initially realize that the object was a gun; Petitioner stated that the gun fired accidentally when Mr. Folsom placed it in his hand. (ECF No. 10-6 at pp. 91-94.)

II. DISCUSSION

A. Standard of Review

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted

a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the U.S. Supreme Court's decisions. Williams, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. Eley, 712 F.3d at 846 (quoting Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)).

In addition, any state-law-based challenges are not cognizable in federal habeas review. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson

v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also, Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

B. Analysis

1. Ground One

In Ground One of the habeas petition, Petitioner argues that his trial counsel was ineffective. First, Petitioner claims that counsel was unprepared and failed to "conference sufficiently" with Petitioner to prepare for trial. Second, Petitioner asserts that counsel failed to request an instruction regarding the mistake of fact defense pursuant to N.J. Stat. Ann. 2C:2-4. Third, Petitioner argues that counsel failed "to request the trial court mold instructions to the jury incorporating facts favorable to the defense with respect to the charge of possession of a weapon for an unlawful purpose." Fourth, Petitioner argues that counsel failed to request a proper instruction with respect to the possession of a weapon for an unlawful purpose charge. Finally, Petitioner asserts that counsel failed "to ensure the petitioner's right to be present at every stage of the proceeding by allowing his exclusion from portions of the voir dire." Petitioner raised these issues in the course of his PCR proceedings. The PCR court

6

denied the claim and, for the reasons stated by the PCR court, the Appellate Division affirmed.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating an ineffective assistance of counsel claim. First, the petitioner must show that considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688; see also Ross v. Varano, 712 F.3d 784, 798 (3d Cir. 2013). Petitioner must identify acts or omissions that are alleged not to have been the result of reasonable professional judgment. See Strickland, 466 U.S. at 690. The federal court must then determine whether in light of all of the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. See id.

Second, a petitioner must affirmatively show prejudice, which is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See id. at 694; see also McBride v. Superintendent, SCI Houtzdale, 687 F.3d 92, 102 n. 11 (3d Cir. 2012). "With respect to the sequence of the two prongs, the Strickland Court held that 'a court need not determine whether counsel's performance was deficient before

7

examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" Rainey v. Varner, 603 F.3d 189, 201 (3d Cir. 2010) (quoting Strickland, 466 U.S. at 697).

Additionally, in assessing an ineffective assistance of counsel claim under AEDPA, the Supreme Court has noted that:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Harrington, 131 S.Ct. at 785 (internal quotation marks and citation omitted) (emphasis in original).

This Court finds that the state courts' denial of this claim was not contrary to, or an unreasonable application of, federal law under Strickland, nor was the denial based on an unreasonable determination of fact. Accordingly, these claims, which are discussed below, will be denied.

8

a. Preparedness for Trial

Petitioner argues that his counsel was not prepared for trial.

The Appellate Division discussed this claim as follows:

> As to counsel's alleged unpreparedness for trial, the court found, after its thorough review of the record, that trial counsel "questioned every witness in detail, made motions. This [wa]s not an unprepared attorney." The court further found that the trial judge allowed defendant to confer privately with his counsel, after which defendant indicated "he was ready to proceed and that he still wanted [his trial counsel] as his attorney. And basically, ... there were no issues between them, or as to preparedness."
>
> . . .
>
> It is axiomatic that in order for defendant to obtain relief based on ineffective assistance grounds, he is obliged to show that: (1) trial counsel's performance was deficient such that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed by the Sixth Amendment; and (2) this deficient performance prejudiced the defense such that it "deprive[d] the defendant of a fair trial." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L. Ed.2d 674, 693 (1984); see also State v. Parker, 212 N.J. 269, 279-80 (2012); State v. Fritz, 105 N.J. 42, 58 (1987). In order to prove a claim, defendant must establish both factors. State v. Allegro, 193 N.J. 352 (2008) ("to sustain a claim ... [these] two separate elements must coalesce.").
>
> To sustain that burden, the defendant must allege and articulate specific facts, which "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992). However, the mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999). Rather, trial courts should grant evidentiary hearings and make a determination on the merits only if the defendant has presented a prima facie

9

claim of ineffective assistance. State v. Preciose, 129
N.J. 451, 462-63 (1992).

On this score, there is a strong presumption that counsel
"rendered adequate assistance and made all significant
decisions in the exercise of reasonable professional
judgment." Strickland, supra, 466 U.S. at 690, 104 S.Ct.
at 2066, 80 L. Ed.2d at 695. Further, because prejudice
is not presumed, Fritz, supra, 105 N.J. at 52, the
defendant must demonstrate "how specific errors of
counsel undermined the reliability" of the proceeding.
United States v. Cronic, 466 U.S. 648, 659 n. 26, 104
S.Ct. 2039, 2047 n. 26, 80 L. Ed.2d 657, 668 n. 26
(1984). Moreover, such acts or omissions of counsel must
amount to more than mere tactical strategy. Strickland,
supra, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L. Ed.2d
at 694-95. Thus, "in order to establish a prima facie
claim, [the defendant] must do more than make bald
assertions that he was denied the effective assistance
of counsel. He must allege facts sufficient to
demonstrate counsel's alleged substandard performance."
Cummings, supra, 321 N.J. Super. at 170.

Trial counsel's representation must be viewed as a whole
and in light of the State's evidence of guilt. See State
v. Marshall, 123 N.J. 1, 165 (1991), cert. denied, 507
U.S. 929, 113 S.Ct. 1306, 122 L. Ed.2d 694 (1993).
Furthermore, a valid conviction will not be overturned
merely because defendant is dissatisfied with counsel's
exercise of judgment during trial. State v. Coruzzi, 189
N.J. Super. 273, 319-20 (App. Div.), certif. denied, 94
N.J. 531 (1983).

Simple mistakes, bad strategy, or bad tactics "do not
amount to ineffective assistance of counsel unless,
taken as a whole, the trial was a mockery of justice."
State v. Bonet, 132 N.J. Super. 186, 191 (App. Div.
1975). The simple fact that a trial strategy fails does
not necessarily mean that counsel was ineffective. State
v. Bey, 161 N.J. 233, 251 (1999) (citing State v. Davis,
116 N.J. 341, 357 (1989), cert. denied, 530 U.S. 1245,
120 S.Ct. 2693, 147 L. Ed.2d 964 (2000).

Measured by these standards, we are persuaded that
defendant has failed to satisfy either the performance

> or prejudice prongs of the <u>Strickland</u> test. We therefore
> affirm substantially for the reasons stated in Judge
> Clark's thorough and well-articulated oral opinion of
> February 3, 2012.

<u>State v. Scott</u>, No. A-5238-11T1, 2014 WL 814069, at *4-5 (N.J.

Super. Ct. App. Div. Mar. 4, 2014).

Petitioner is not entitled to habeas relief on his claim that

trial counsel was unprepared. In affirming the PCR court, the

Appellate Division properly cited the <u>Strickland</u> standard. The PCR

court thoroughly reviewed the record and concluded that

Petitioner's trial counsel demonstrated preparedness and that

Petitioner, after conferring with his attorney, decided that he

was ready to proceed with trial and wanted counsel to remain his

attorney. (PCR Hearing Transcript, Feb. 3, 2012, ECF No. 10-13 at

pp. 20-23.) Indeed, at the start of trial, there was a discussion

of this issue between the trial judge, Petitioner, and Petitioner's

counsel, and ultimately, Petitioner agreed to proceed with trial

after being afforded the opportunity to confer with counsel. (Trial

Tr., Feb. 1, 2001, ECF No. 10-3 at pp. 12-15.) Based on the record

and affording proper deference to the PCR court, the Court

concludes that the state courts did not unreasonably apply

<u>Strickland</u> on this issue. Accordingly, this claim will be denied.

b.    Failure to Request Mistake of Fact Instruction

Petitioner    next    argues    that    trial    counsel    was

constitutionally ineffective because he did not request a mistake

of fact instruction. The Appellate Division affirmed the PCR

court's denial of this claim for the reasons given by the PCR

court. The PCR court addressed the claim as follows:

> THE COURT: Okay. I agree with the Prosecutor on his
> arguments on mistake of fact, essentially for the
> reasons he said.
>
> I also note that the possession, as he alluded to,
> indicates that you must have knowing, intentional
> control over an item. That it can not be fleeting in
> nature. That you have to know the character of what it
> is that you possess, i.e, that it is a firearm. And,
> again, can not be fleeting in nature where someone hands
> you something and you just say, no, no, I don't want it.
>
> I thought the Judge's charge on possession was very,
> very thorough. I would note if -- if a charge is not
> asked to be given, my understanding is the Court has to
> find really plain error that it wasn't charged.
>
> I find that it was harmless beyond a reasonable doubt.
> I agree that I don't believe it's in the case in the
> first place, and that the possession charge was very
> thorough and certainly covered what the defendant's
> concerns were about his theory of the case.
>
> I would also note that the defendant testified, and this
> is before any charge, and he indicated, you know, I took
> the gun with me when I left. So, I'm going to deny that
> point.

(ECF No. 10-13 at pp. 38-39.) In essence, the PCR court found that

Petitioner was not prejudiced by counsel's failure to request a

mistake of fact instruction because the jury charge with respect to possession addressed the issue.

Petitioner claimed he did not know that the victim had handed him a gun at the time of the incident. Under New Jersey law, "[i]gnorance or mistake as to a matter of fact or law is a defense if the defendant reasonably arrived at the conclusion underlying the mistake and (1) It negatives the culpable mental state required to establish the offense; or (2) The law provides that the state of mind established by such ignorance or mistake constitutes a defense." N.J. STAT. ANN. 2C:2-4. The PCR court concluded that Petitioner was not prejudiced by counsel's failure to request a mistake of fact charge in part because the trial court's instruction regarding possession was sufficient to alleviate any such concerns. The trial court's instruction stated:

> The second element that the State must prove beyond a reasonable doubt is that the defendant possessed the firearm. In this case, the State alleges that the defendant had actual possession of the particular firearm.
>
> The word possess, as used in the criminal statute, signifies a knowing, intentional control of a designated thing, accompanied by a knowledge of its character. Thus, a person must know or be aware that he possessed the item, in this case a firearm and the person must know that it was a firearm when he possessed it or controlled it.
>
> This possession cannot merely be a passing control, that is fleeting or uncertain in its nature. In other words, to possess within the meaning of the law the defendant

13

must knowingly procure or receive the item possessed or be aware of his control thereof for a sufficient period of time to have been able to relinquish control of it if he chose to do so.

A person may possess an item even though it was not physically on his person at the time of his arrest if the person had, in fact, at some prior time, that being the time of the alleged offense here, had control and dominion of it.

When we speak of possession we mean a conscious, knowing possession. In this case, the State alleges that the defendant had actual possession of the firearm. A person is in actual possession of a particular article or thing when he knows what it is, that is, the person has knowledge of its character and knowingly has it is on his person at a given time.

(Trial Tr., Feb. 9, 2001, ECF No. 10-7, 45-46.)

The Court concludes that the state courts' determination that Petitioner was not prejudiced by counsel's failure to request a mistake of fact instruction was not contrary to or an unreasonable application of the Strickland standard. As the PCR court found, the trial court's instruction with respect to possession and the knowledge required to be found beyond a reasonable doubt was more than adequate to account for Petitioner's defense. The instruction made it clear that Petitioner could not be found guilty unless he knowingly possessed the firearm, thus obviating any alleged need for a mistake of fact instruction. Thus, Petitioner's trial counsel did not render ineffective assistance by not requesting that the

charge be given. Accordingly, Petitioner is not entitled to habeas relief on this claim and it will be denied.

        c.   Instructions Regarding the Possession for an Unlawful Purpose Charge

Petitioner next argues that trial counsel was ineffective for failing to request that the trial court "mold" instructions to the jury incorporating facts favorable to the defense with respect to the charge of possession of a weapon for an unlawful purpose. He also asserts that counsel failed to request a proper instruction regarding what the actual unlawful purpose in question was given that he was acquitted of the second- and third-degree aggravated assault, thus "making the State's theory of possession for an unlawful purpose impossible." (Pet., ECF No. 1 at 19.)

The Appellate Division affirmed the PCR court's denial of this claim for the reasons stated by the PCR court and summarized the PCR court's findings as follows:

> The PCR court found defendant's other complaint about the jury charge on possession of a weapon for an unlawful purpose to be similarly without merit. In this regard, defendant argued pro se that there must be a "specific fact finding to acknowledge what the unlawful purpose is, not just the reading of unlawful purpose ... [which] [was] not in the instruction at all." Defendant further argued that since he was acquitted of aggravated assault with a deadly weapon, the unlawful purpose no longer existed.
>
> Judge Clark rejected this argument, finding that defendant had been convicted of pointing a firearm, and the trial judge repeatedly informed the jury the

15

unlawful purpose was "against the person of [defendant's victim]." The court found it was "so obvious that the [trial] [j]udge was indicating it ha[d] to be possession of a gun for unlawful purpose to use unlawfully against the person of [defendant's victim]." If, on the other hand, "[defendant] had not been convicted of pointing a firearm then [the court] would consider possession for an unlawful purpose to be [an] inconsistent verdict." Consequently, the PCR judge was "satisfied with the jury charge[,]" and "any error, if there was one, was harmless beyond a reasonable doubt because [defendant] was convicted of pointing a firearm."

Scott, 2014 WL 814069, at *3. Thus, the state courts essentially concluded that Petitioner was not prejudiced by counsel's alleged failure to address the possession for an unlawful purpose instruction because Petitioner's conviction for pointing the gun was consistent with the unlawful purpose charge.

This Court agrees with the state courts that Petitioner has failed to demonstrate a reasonable probability that but for trial counsel's alleged error, the outcome of his trial would have been different. Though the jury acquitted Petitioner of the more serious aggravated assault charges, the jury convicted Petitioner of fourth-degree aggravated assault for pointing the weapon. Because pointing a weapon at another person is unlawful, it was not "impossible" for the jury to convict Petitioner of possession with an unlawful purpose. Moreover, Petitioner has not identified how his counsel should have sought to "mold" the instruction or how such molding would have altered the outcome of the trial.

16

Accordingly, Petitioner is not entitled to habeas relief on this claim and it will be denied.

        d.    Failure to ensure Petitioner's right to be present for voir dire

Petitioner argues that his trial counsel failed "to ensure the petitioner's right to be present at every stage of the proceeding by allowing his exclusion from portions of the voir dire." (Pet., ECF No. 1 at p. 20.) At trial, after the trial judge explained his rights and Petitioner conferred with his counsel, Petitioner decided that he would not be present for any potential voir dire of jurors that may have occurred in the judge's chambers. (Trial Tr., Feb. 1, 2001, ECF No. 10-3 at pp. 3-11.) Petitioner stated on the record that he voluntarily made the decision and that he had sufficient time to discuss the matter with his attorney. (Id. at p. 11.) Petitioner now claims that he was denied effective assistance of counsel because his attorney allowed him to be excluded from portions of voir dire.

The Appellate Division again affirmed the PCR court's denial of this claim based on the PCR court's reasoning. The Appellate Division summarized the PCR court's findings as follows:

> As for defendant's absence from voir diring prospective jurors in the judge's chambers, the court determined that the trial judge "took painstaking time and effort to explain to [defendant] what his rights were. [Trial counsel] expressed the opinion that [he] believe[d] it's better that [defendant] ... not be inside."[2] While Judge

Clark recognized that defendant did not agree with his attorney's opinion initially, he was given time to discuss the matter with the trial judge, "and then [had a] private discussion with his attorney [and] he changed his mind." Judge Clark found that "this [was] a scenario, in terms of the decision go into chambers or not, that attorneys make different decisions on .... it's a matter of best serving their client. That's how [trial counsel] felt he best served his client." Judge Clark found that "with the defendant agreeing on the record, [she][was] not going to second guess that."

The trial judge asked defendant specifically "whether [he] want[ed] to be present in [ ] chambers when the jury selection process is taking place." Moreover, the trial judge informed defendant that he had "a right to be present at all stages throughout the proceedings .... [and][o]nly [defendant] [could] give up that right, if [he] [chose] to do so voluntarily after [he] confer[ed] with [his] attorney." After discussing the matter with his trial counsel, defendant's "position remain[ed] that he [was] satisfied that it [was] in his best interest that he not join [counsel] in chambers for purposes of voir diring any of the jurors."

Scott, 2014 WL 814069, at *3.

The Court finds that the state courts rejection of this claim was not contrary to, or an unreasonable application of, the Strickland standard. The PCR court, in essence, found that trial counsel's recommendation that Petitioner not be present in chambers was a strategy decision: counsel did not want the presence of the officers that would have to accompany Petitioner into chambers to reveal to the jurors that Petitioner was in custody and also wanted to minimize the number of people present in chambers to encourage potential jurors to be candid during

18

questioning. (ECF No. 10-13 at pp. 34-35.) Moreover, as the PCR court observed, Petitioner stated on the record that he understood his rights and voluntarily decided not to be present for in-chambers voir dire of jurors. In addition, Petitioner has not shown a reasonable probability that the outcome of his trial would have been different if he had been present during any such questioning. Accordingly, Petitioner is not entitled to habeas relief on this claim. Ground One therefore will be denied.

      2.    Ground Two

In Ground Two of the habeas petition, Petitioner challenges his sentence as excessive and illegal. Petitioner claims that "the trial judge upgraded the unlawful poss[ession] of weapons charges for unlawful purpose to a 1st degree based on acquitted conduct. In his own language and discretion, even though the jury found petitioner not guilty of agg[ravated] [assault] . . . he (the judge) feels as though defendant shot the victim." (Pet. at 8.) Petitioner further asserts that his sentence "must be vacated on the basis of Blakely v. Washington." (Id. at 9.)

Petitioner challenged his sentence in his direct appeal. In doing so, Petitioner did not raise this argument in these specific terms; however, he did assert that his extended term of sentence pursuant to New Jersey's Graves Act was illegal and that it violated Apprendi v. New Jersey, 530 U.S. 466 (2000). The Appellate

Division, which was the last court to consider this argument, addressed Petitioner's claim as follows:

> We address Scott's sentencing arguments. Scott argues first that proofs were insufficient to establish a prior Graves Act offense as a necessary predicate for his extended term, Graves Act sentence. We disagree.
>
> At the Graves Act hearing, the State introduced a 1991 judgment of conviction following a plea of guilty to three counts of first-degree armed robbery in violation of N.J.S.A. 2C:15-1 (Counts seven, eight and nine) with concurrent sentences imposed of fifteen years with five years' parole ineligibility on each, as well as a conviction on Count ten charging second-degree aggravated assault in violation of N.J.S.A. 2C:12-1b(1) with a concurrent sentence imposed of seven years, with three years' parole ineligibility. Additionally, the State introduced the indictment underlying the 1991 conviction, which, in Count Seven, charged Scott and another with commission of an act of robbery upon Isaac Miranda while armed with or using or threatening the immediate use of a deadly weapon, namely a shotgun. In Count Ten, the indictment charged Scott and his co-defendant with attempting to cause or purposely or knowingly causing serious bodily injury to Isaac Miranda, namely by shooting him in the thigh with a shotgun. Thus, not only use of a shotgun but also its operability was charged, thereby satisfying the definition of "firearm" contained in N.J.S.A. 2C:39-1f. A plea to these charges necessarily required an admission of guilt as to the elements of the crimes charged. Even if that plea were merely to acts as an accomplice, that factual basis would be sufficient to sustain a Graves Act sentence. State v. White, 98 N.J. 122, 130-31 (1984).
>
> Further, the sentence imposed upon Scott in 1991 was consistent with a Graves Act offense. See N.J.S.A. 2C:43-6(c), which provides:
>
>> A person who has been convicted . . . of a crime under any of the following sections: ... 2C:12-1b

20

[or] 2C:15-1 who, while in the course of committing or attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a firearm as defined in 2C:39-1f, shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater ... during which the defendant shall be ineligible for parole.

No other basis for imposition of a period of parole ineligibility appears from the text of the 1991 judgment of conviction. As a final matter, when invited to do so, Scott offered nothing to suggest that the State's proffer in connection with the 1991 crimes was incorrect.

Under these circumstances, we find that the State has met its burden of proof of the predicate offense in a properly conducted hearing, whether that proof is judged by a standard of clear and convincing evidence or by a standard of proof beyond a reasonable doubt. See N.J.S.A. 2C:43-6d; State v. Watson, 346 N.J. Super. 521, 532-34 (App. Div. 2002). The introduction of a transcript of Scott's 1991 plea, although useful, was not essential under the circumstances presented.

Having found the predicate crime to exist, and having accepted a jury verdict establishing the elements of a Graves Act crime in the instant matter, the trial court properly imposed an extended sentence on Scott pursuant to N.J.S.A. 2C:43-6(c) and (d), 2C:43-7 and 2C:44-3(d). That sentence of twenty years with a ten-year period of parole ineligibility was at the top of the permissible sentencing range. See N.J.S.A. 2C:43-7a(3) and 2C:43-7b. At the time of sentencing, the trial judge justified this upward departure from the presumptive term by noting the circumstances of the offense, the risk that Scott will commit another crime, the extent and seriousness of his prior criminal record, and the need for deterrence. N.J.S.A. 2C:44-1a(1), (3), (6), and (9). The judge found no mitigating factors. Having reviewed defendant's presentence investigation report together

> with the record on sentencing and the arguments of
> counsel, we find no ground to disturb the trial court's
> exercise of discretion in this regard. State v. Roth, 95
> N.J. 334, 359-61 (1984).
>
> Defendant claims additionally that an Apprendi violation
> occurred at sentencing, since an extended term, as well
> as a specified period before parole was imposed on the
> basis of a predicate offense, the existence of which was
> not submitted for determination by the jury in the
> present matter. We disagree.
>
> Apprendi excepts from its reach extended sentences based
> upon prior judgments of conviction. 530 U.S. at 490; 120
> S. Ct. at 2362-63, 147 L.Ed.2d at 455. See also Watson,
> supra, 346 N.J. Super. at 532-34. Thus, no need for
> consideration of the predicate offense by the jury
> existed in this case. The facts permitting the
> imposition of a Graves Act sentence as the result of the
> instant crime were properly found by a jury to exist, as
> Apprendi requires.

(ECF No. 10-16 at p. 6.)

A federal court may review a state sentence only where the
challenge is based upon "proscribed federal grounds such as being
cruel and unusual, racially or ethnically motivated, or enhanced
by indigency," see Grecco v. O'Lone, 661 F. Supp. 408, 415 (D.N.J.
1987) (citation omitted), which means that an attack on the state
court's discretion at sentencing cannot be reviewed in a federal
habeas proceeding unless there is a showing of a violation of a
separate federal constitutional limitation. See Pringle v. Court
of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984). The violation
of a right created by state law is not cognizable as a basis for
federal habeas relief. See Estelle, 502 U.S. at 67-68 ("We have

stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))); see 28 U.S.C. § 2254(a). Thus, this Court may not review the Appellate Division's decision regarding the trial court's application of New Jersey's Graves Act.

The Court will, however, consider Petitioner's claim that the trial court imposed an excessive sentence in violation of Apprendi and Blakely.[2] The Appellate Division concluded that the trial court's imposition of an extended term based on the existence of a predicate Graves Act offense, where the existence of such an offense was not submitted to a jury, was not contrary to the Supreme Court's ruling in Apprendi. This Court concludes that the Appellate Division's decision on this claim was not contrary to, or an unreasonable application of, federal law. As the Appellate

---

[2] As discussed above, Petitioner did not raise the Blakely argument presented in his instant Petition before the Appellate Division. This claim therefore is unexhausted. However, to the extent that Petitioner's claim is unexhausted, this Court will deny it on the merits pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). See Carrascosa v. McGuire, 520 F.3d 249, 255 n. 10 (3d Cir. 2008) ("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2) . . . . Denying an unexhausted claim on the merits is consistent with the statute"). Moreover, given Blakely's relationship to Apprendi, Petitioner's arguments raise similar concerns.

Division observed, Apprendi permits sentencing courts to consider the existence of prior convictions when imposing extended sentences; the jury is not required to make such findings. Apprendi, 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (emphasis added)). Accordingly, Petitioner is not entitled to federal habeas relief on this claim and it will be denied.

In his Petition, Petitioner also argues that the trial judge made factual determinations that were inconsistent with the jury's verdicts and that the court therefore violated Blakely v. Washington by imposing an extended sentence based on facts not found by the jury. A defendant's constitutional rights are violated where a judge imposes a sentence greater than the statutory maximum based upon additional findings of fact that were not so found by the jury or admitted by the defendant. Blakely v. Washington, 542 U.S. 296, 304 (2004) ("When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment . . . and the judge exceeds his proper authority") (citation omitted); Apprendi, 530 U.S. at 490. Here, Petitioner argues that the trial court "feels as though [Petitioner] shot the victim" even though

the jury acquitted Petitioner of the more serious aggravated assault charges. (Pet. at 8, 9.) This claim has no merit.

During the sentencing hearing, the trial judge stated as follows:

> The defendant had possession of a firearm when he shouldn't have had a firearm and possessed it, misused it and engaged in behavior which resulted in the victim in this case being shot. . . . I am satisfied that on possession of a weapon for an unlawful purpose, a second-degree offense, that the defendant should be sentenced to a term in the first-degree range.

(Sentencing Transcript, May 1, 2001, ECF No. 10-9 at pp. 62-63, 64.) The trial judge's statement that Petitioner possessed a firearm that he should not have had and misused it, ultimately resulting in the victim's being shot, is consistent with the jury's convicting Petitioner for unlawful possession of a weapon and fourth-degree aggravated assault for pointing it at the victim. Moreover, there was no dispute that the victim had in fact been shot. In addition, the trial court's sentence did not exceed the statutory maximum for the given offense and the applicable extended term; rather, the twenty year term was within the statutory range. See N.J. STAT. ANN. 2C:43-6(c); N.J. STAT. ANN. 2C:43-7(3) (a person convicted of designated offenses of the second degree shall be sentenced to an extended term of imprisonment "for a term which shall be fixed by the court between 10 and 20 years"). Petitioner

is therefore not entitled to habeas relief on this claim. Accordingly, Ground Two will be denied.

       3.   Ground Three

In Ground Three, Petitioner asserts that the trial court erred in denying his motion for a judgment of acquittal based on the evidence in the case. Specifically, on his direct appeal, Petitioner challenged his conviction for possession of a weapon for an unlawful purpose in violation of N.J. STAT. ANN. 2C:39-4a. The Appellate Division addressed this claim as follows:

> Our careful review of the record, together with the parties' briefs satisfies us that the arguments presented on Scott's behalf in Point One of his brief lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). The evidence adduced at trial was clearly sufficient to support the jury's verdict in all respects, as well as the trial court's denial of Scott's motion for a new trial. A manifest denial of justice under the law did not occur in this case. State v. Gaikwad, 349 N.J. Super. 62, 82 (App. Div. 2002).

(ECF No. 10-16 at p. 6.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction, if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." <u>Jackson</u> <u>v. Virginia</u>, 443 U.S. 307, 319 (1979). A petitioner raising an insufficiency of the evidence claim faces a "'very heavy burden' to overturn the jury's verdict for insufficiency of the evidence." <u>United States v. Root</u>, 585 F.3d 145, 157 (3d Cir. 2009) (citing <u>United States v. Dent</u>, 149 F.3d 180, 187 (3d Cir. 1998)).

"When assessing such claims on a petition for habeas relief from a state conviction, the sufficiency of the evidence standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'" <u>Robertson v. Klem</u>, 580 F.3d 159, 165 (3d Cir. 2009) (quoting <u>Jackson</u>, 443 U.S. at 324 n. 16).

The Court finds that the Appellate Division's decision denying this claim was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of the facts. In addition to the possession of a weapon for an unlawful purpose charge, Petitioner was convicted of fourth-degree aggravated assault for pointing the gun in violation of N.J. Stat. Ann. 2C:12-1(b)(4), as well as other crimes. The evidence submitted at trial was sufficient for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt on the possession for an unlawful purpose offense.

With respect to the aggravated assault charge, the State was

required to prove beyond a reasonable doubt that Petitioner "[k]nowingly under circumstances manifesting extreme indifference to the value of human life points a firearm . . . at or in the direction of another, whether or not the actor believes it to be loaded." N.J. STAT. ANN. 2C:12-1(b)(4). Testimony from the victim and his mother, when credited by the jury, was sufficient to support Petitioner's conviction on this charge. Similarly, the victim's testimony that Petitioner produced the weapon from his coat and pointed it at his head after the victim was shot is sufficient to support Petitioner's conviction for possession of a weapon for an unlawful purpose in violation of N.J. STAT. ANN. 2C:32-4a, which required the State to prove that Petitioner possessed a firearm with the purpose to use it unlawfully against another person – in this case, by pointing it at the victim. A rational trier of fact could have concluded, based on the evidence, that Petitioner purposely pointed a firearm at the victim, which is unlawful. Accordingly, petitioner is not entitled to habeas relief on this claim. Therefore, Ground Three of the petition will be denied.

### 4. Ground Four

In Ground Four, Petitioner asserts that his direct appeal counsel and his PCR counsel were ineffective. First, Petitioner's claim regarding his PCR counsel will be denied. "[T]here is no

right to counsel in state collateral proceedings after exhaustion of direct appellate review." <u>Coleman v. Thompson</u>, 501 U.S. 722, 756 (1991) (citing <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 556 (1987)); <u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1319 (2012) (recognizing ineffective assistance of counsel at initial collateral review proceeding may provide equitable reason to excuse procedural default, although there is no constitutional right to counsel at initial collateral review proceeding). Therefore, the Court will deny this claim because it does not raise a cognizable federal habeas claim. <u>See</u> <u>Jones v. Pennsylvania Bd of Probation and Parole</u>, 492 F.App'x 242, 244 (3d Cir. 2012) (the Supreme Court in <u>Martinez v. Ryan</u> declined to hold there is a constitutional right to counsel in initial collateral review proceedings)).

Petitioner raised his claim regarding the effectiveness of his appellate counsel during the PCR proceedings. The Appellate Division, which affirmed for the reasons stated by the PCR court, discussed this claim as follows:

> Lastly, defendant complained that appellate counsel was ineffective for "not having proper contact, enough contact, or any contact with [defendant]. And, also, not raising some of the points" raised at his PCR hearing. Judge Clark denied defendant's claim, stating,

> [t]he Appellate Division decision indicated that essentially the motion for acquittal was clearly without merit, did not merit further written discussion by them. So, they read the same transcript I did and believed that the verdicts were supported

by the evidence.

I can only say that I read this transcript extremely, extremely carefully. I believe I have a good sense of what went on in the trial.

[Trial counsel] was very successful on the aggravated assault charges. Again, I believe, the conviction on the fourth degree was because [the victim's mother] walked in on it.

There was a <u>Sands</u> hearing, there was a *Wade* hearing, there was a <u>Miranda</u> hearing. There was a motion for a new trial. And he performed very, very well in his questioning during the trial, and brought up, I think, every reasonable point that you could possibly bring up.

So, under all the circumstances, I do not believe that there is any prima facie case that would justify a testimonial hearing. And I'm going to deny the post-conviction relief motion.

. . .

[W]e are persuaded that defendant has failed to satisfy either the performance or prejudice prongs of the <u>Strickland</u> test. We therefore affirm substantially for the reasons stated in Judge Clark's thorough and well-articulated oral opinion of February 3, 2012.

State v. Scott, No. A-5238-11T1, 2014 WL 814069, at *4-*5 (N.J. Super. Ct. App. Div. Mar. 4, 2014).

The state courts essentially concluded that Petitioner had not established a prima facie claim for ineffective assistance of his appellate counsel because he had not demonstrated prejudice. Specifically, those courts found that the arguments Petitioner raised in his direct appeal lacked merit, as the Appellate Division

had determined on Petitioner's direct appeal. In addition, the courts found that the arguments that Petitioner raised in his PCR proceedings also lacked merit and therefore would not have succeeded if his appellate counsel had raised them on direct appeal. As such, Petitioner could not establish a reasonable probability that the outcome of his appeal would have been different but for the alleged deficient performance of his appellate counsel. This Court finds that the state courts' decisions on this claim were not contrary to, or an unreasonable application of, federal law. Having found that Petitioner's trial counsel was not constitutionally ineffective, appellate counsel could not have rendered ineffective assistance by failing to raise ineffective assistance on appeal because the claim would not have succeeded. Thus, Petitioner is not entitled to habeas relief on this claim. Ground Four therefore will be denied.

IV. CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue. See Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial

showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

V.   CONCLUSION

For the reasons discussed above, in the accompanying Order filed herewith, the Court will deny habeas relief.

STANLEY R. CHESLER
United States District Judge